# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## OCTOBER TERM, 1904.

---

### ATLANTIC AND BIRMINGHAM RAILWAY COMPANY *v.* MAYOR AND COUNCIL OF MONTEZUMA.

1. Where by virtue of the Civil Code, § 2167, par. 5, and a contract with the city, the plaintiff had a right to construct and maintain a railroad track through Cherry street in Montezuma, this would not authorize the company to use the street for drilling, switching, or transferring cars.
2. The chancellor did not err in refusing to enjoin the city from enforcing an ordinance limiting the speed of trains and requiring a flagman to precede the trains in the street, and prohibiting the company from stopping, drilling, or in any manner shifting or transferring cars between indicated points on the street.

Submitted December 14, 1904. — Decided January 30, 1905.

Petition for injunction. Before Judge Littlejohn. Macon superior court. November 2, 1904.

On April 7, 1902, in consideration of the mutual benefits arising to each party it was agreed that the Mayor and Council of Montezuma would secure for the Atlantic and Birmingham Railroad Company a right of way from the line of Macon county to Flint river, including right of way to and through Cherry street in Montezuma, Ga., and would hold the railroad company harmless from any damages arising from the operation of said road through Cherry street which might be claimed by the owners of the property adjacent thereto by reason of the use of this street for this purpose having been allowed by the city council. The city also provided for the right of way for the location of a " Y " on lands outside of the city, the " Y " to be used for turning locomotives and trains; and donated a right of way 1,200 feet in

length, running west of Dooly street towards the Flint river. The railroad company on its part agreed to begin and prosecute to a finish the building of its road from Cordele to and through Montezuma. By its petition the railroad company alleged, that in pursuance of this contract it had constructed its line of railway through Cherry street to the aforesaid tract of land upon which it erected its depot, and has continued to maintain and operate its road to said point as its terminus; that, especially in the handling of freight-cars at said point where connection is made with the Central of Georgia Railway, it is necessary to switch and drill its trains upon Cherry street, and in shifting and transferring cars it is compelled to use the part of Cherry street between the east side of Spalding street and the old Rosser storehouse in Montezuma; that notwithstanding it has endeavored only to use Cherry street for these purposes in a reasonable manner, and so to limit the use as not to interfere with the interests of the defendant or of the public, and although no damage has resulted to the defendant or the public, the city council, on March 25, 1903, passed an ordinance prohibiting engines going through Cherry street at a greater rate than three miles an hour, and also requiring a flagman to go ahead of the train, "and no train or engine will be permitted to stop, drill, or in any manner shift or transfer cars between the east side of Spalding street and the old Rosser warehouse, except to prevent accident, under penalty of being punished as provided in sec. 13, of the charter;" that the city council has caused this ordinance to be enforced by arresting engineers and preventing switching, drilling, shifting, and transferring cars between the points designated, so as to seriously interfere with the plaintiff's business as a common carrier, and it threatens so to enforce said ordinance as to prohibit the plaintiff from the use of that portion of Cherry street, to its irreparable damage and to the annulment of the rights and privileges granted by the contract. Whereupon it prayed for an injunction.

The city demurred and answered, claiming that when the contract was made the plaintiff specially agreed that Cherry street should only be used by trains coming and going on schedule trips, and did not include any right to switch or to drill; that the City of Montezuma is built in a narrow space between Flint river and Beaver Creek; that while Cherry street is the busiest portion of

the town, with many of the chief houses of the place on each side, it is the narrowest street in the city, and at the point indicated by the ordinance four different streets and three public ways converge into said street; that the plaintiff has shut up and practically excluded the public from all access to the town west of the Rosser store and so obstructed Cherry street as to make it impassable beyond that point; that during the time of switching and transferring cars, which is almost continuous, the travel and business of the town is absolutely paralyzed and stopped; that the noise of the engines is deafening; that it is unreasonable for the company to make a side-track and a switch-yard of Cherry street; and that the ordinance was passed and is being enforced in the discharge of the city's duty to the public.　　There was evidence pro and con.　On the return of the rule to show cause, after hearing affidavits, and argument on the demurrer, the court refused, in vacation, to pass upon several issues raised, holding that, irrespective of the verbal agreement, the municipal authorities had the authority to prohibit by ordinance the use of the street for the purposes complained of in the petition; and thereupon refused the interlocutory injunction prayed for.　To this order the plaintiff excepted.

*J. L. Sweat* and *J. M. duPree*, for plaintiff.
*Greer & Felton*, for defendant.

LAMAR, J.　There is a "marked difference between the lawful and unlawful use of railroad property." *Austin* v. *Augusta Terminal Ry. Co.*, 108 *Ga.* 690.　Both the contract and the Civil Code, § 2167, par. 5, permitting the longitudinal use of the street, must be construed to authorize only lawful use, and not the creation or maintenance of a nuisance thereon.　Streets and highways are intended primarily for the purposes of travel and transportation.　When a railroad company is authorized to lay its track thereon, there is a conclusive presumption that the use thereunder must be for similar purposes.　A private citizen would not be authorized, even in front of his own premises, to obstruct a street, or to use it as a place of storage, or for any purpose which would interfere with the rights of the balance of the public.　The railroad company stands upon the same footing.　While permitted to use the street or the highway for transportation, it must adjust

itself to the rights of the public in the same way that the public must adjust itself to the rights of the company. The railroad company can not unreasonably obstruct the street, or interfere with travel. It can not use the street as a depot, or a place for loading or unloading cars. And it has been repeatedly held that a railroad company can not use the street as a yard, or for switching or drilling purposes.

The court did not err in refusing the injunction. *W. & A. R. Co.* v. *Young,* 81 *Ga.* 397 (3); *Kavanagh* v. *Mobile R. Co.,* 78 *Ga.* 803; 27 A. & E. Enc. Law (2d ed.) 179 (12).

*Judgment affirmed. All the Justices concur.*